UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 17-cr-137 (APM/GMH) |
| CHARLES LEE SMOOT, | ) ) ) | |
| Defendant. | ) ) | |

**DETENTION MEMORANDUM**

This matter comes before the Court upon the application of the United States that Defendant, Charles Smoot ("Smoot" or "Defendant"), be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(A) and (f)(1)(D). Defendant has been charged by Indictment with one count of bank robbery, in violation of 18 U.S.C. § 2113(a). The Court held a detention hearing for Defendant on July 14, 2017. Upon consideration of the proffers and arguments of counsel and the entire record herein, the Court ordered that Defendant be held without bail pursuant to 18 U.S.C. § 3142(e). This memorandum is submitted in compliance with the statutory obligation that "the judicial officer shall . . . include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

**FINDINGS OF FACT**

At the detention hearing, the United States proceeded by proffer based on the Indictment. The defense offered no contrary evidence on the merits of the offense, nor challenged any aspect of the government's factual proffer. Accordingly, the Court makes the following findings of fact regarding the government's investigation.

On the morning of July 5, 2017, the Federal Bureau of Investigation ("FBI") learned of a robbery at the TD Bank located at 905 Rhode Island Avenue NE, Washington, D.C. According to the government's proffer, the suspect walked into the bank that morning and approached two tellers, one of whom was pregnant. He handed them each a note reading "No Die Pck, No Police, ALL your money," and threatened to kill them if they did not comply.[1] The tellers handed the suspect $5,121.00 and included in the stash two packs of "bait money" equipped with a small GPS tracking device. Throughout the robbery, the suspect had his right arm concealed inside a black Under Armour bag, apparently to give the impression that he was armed. At no time during the robbery, however, did the suspect brandish a weapon. After receiving the money, the suspect quickly left the store, got into a vehicle, and fled the scene. According to surveillance footage provided by the bank, the suspect is a slender black male, approximately 5'8" tall, and likely in his forties. On the day of the robbery, he was wearing dark pants, a dark shirt, black sunglasses, light grey shoes with white soles, a watch, and a hat with a white skull emblazoned on the front.

After the suspect left the bank, the tellers activated the two GPS tracking devices and observed them move quickly from the bank to a location near 62nd Street NE. There, the devices separated, indicating that the suspect may have been working with an unidentified accomplice, with one moving slowly off the roadway and the other one continuing to travel at a high rate of speed down the roadway. The slow-moving device was eventually recovered near 308 63rd Street NE in a black plastic bag with an unspecified amount of cash. FBI agents tracked the other GPS device to a condemned home located at 405 60th Street NE. The agents began to surveil the residence and saw a black male in his sixties wearing a red shirt, red hat, red shorts, and black shoes walking in the area. The man, who later identified himself to law enforcement as Anthony

---

[1] The government proffered that the pregnant bank teller was so frightened by the robbery that she was briefly hospitalized.

Pierce, began talking to other occupants of the house and then walked to a storm drain near the residence and appeared to slip something into it.

While surveilling the residence, FBI agents saw Pierce speak to an individual matching the description of the bank robbery suspect. Law enforcement photographed this individual as he went in and out of the residence and later determined the he was similar in appearance to both the suspect in the TD Bank robbery on July 5, 2017, as well as a robbery of an Old Dominion bank located in Vienna, Virginia on June 22, 2017. After a short period of time, law enforcement saw the suspect drive away in a red Volvo station wagon bearing a Virginia license plate with the number VVD-2593. The agents searched the law enforcement databases for that license plate, determined that it was not registered to a red Volvo station wagon, and attempted to stop the vehicle. The suspect, however, refused to stop and was able to evade law enforcement by quickly driving away.

Later that day, Magistrate Judge Deborah Robinson authorized a warrant to search the premises located at 405 60th Street NE, Washington, D.C. Law enforcement executed the warrant that evening, and found approximately fifteen people inside, including the owner of the property. During the search, law enforcement recovered from the living room a black Under Armour bag consistent in appearance with the bag used in the bank robbery earlier that morning and a pair of black glasses inside the bag. On top of a laundry machine, law enforcement recovered a pair of black pants consistent with the pants the suspect wore during the robbery. Additionally, law enforcement officers found the GPS device that they had tracked there in a storm drain in front of the residence.

During the search, the owner of the property admitted that she had been drinking earlier that day and appeared intoxicated. Law enforcement proceeded to interview her, and she explained that an individual who goes by Dallas—his first name, according to the owner, is Charles—was in

3

the house earlier that day.  The owner described Dallas as a 5'7" male with a medium build and a groomed beard, and said that he was wearing black jean shorts, a grey tank top, light grey shoes, and a grey hat with a white skull on it when she saw him.  She reported that Dallas had stayed at the residence off-and-on for the past two weeks and more sporadically over the last year.  Dallas, the owner said, typically stayed in the living room of the house but had some of his belongings in her room.  When he arrived at the residence that day, at approximately 11:00 AM, the owner told law enforcement that Dallas ran around the house, ran outside, and then came back inside.  She said that he then began to peek out the door and act in an otherwise paranoid manner.  The owner provided law enforcement with her cell phone and informed the agents that he had used it earlier that day to contact an individual she believed to be his girlfriend.

     Law enforcement contacted Defendant's purported girlfriend and interviewed her on July 6, 2017.  She informed law enforcement that she knew Dallas, and that his full name is Charles Smoot.  She met Smoot approximately six months prior and admitted that she had contacted him by sending a text message to the owner of the home's cell phone.  On the morning of July 5, 2017, according to this witness, Smoot sent her a series of text messages using that cell phone, explaining that he needed $300 to pay off his own cell phone bill.  Later that day, she received a missed call from Smoot.  When law enforcement showed her still images of the suspect from the video footage of the July 5, 2017 TD Bank robbery, she indicated that the individual "looked like it could be" Defendant.  Law enforcement also showed her still images of the suspect in the Old Dominion Bank robbery, but the witness was unable to determine if the individual was Defendant due to the quality of the images.  Smoot had told her in the past, however, that he had robbed banks.

     On July 7, 2017, law enforcement arrested Defendant at Union Station in Washington, D.C.  At the time of his arrest, Defendant was wearing light grey shoes and a large black watch similar

to those that can be seen in the footage of the TD Bank robbery, and was carrying a white Samsung Smartphone. Later, law enforcement officers advised Defendant of his *Miranda* rights and he agreed to speak with them. He denied participating in either the July 5, 2017 TD Bank robbery or the June 22, 2017 Old Dominion Bank robbery. Though he acknowledged that he was the individual who evaded law enforcement after leaving the residence located at 405 60th Street NE in the red Volvo on the afternoon of July 5, 2017, he stated that he was unsure if the photographs that law enforcement took of the suspect while surveilling that residence were him. Upon his arrest, law enforcement learned that the United States District Court for the District of Maryland had issued an arrest warrant for violations of the conditions of his supervised release related to a 2009 conviction in that jurisdiction. Accordingly, there is another matter in this Court regarding Defendant's removal to Maryland, United States v. Charles L. Smoot, 1:17-mj-00480-DAR, that is currently stayed pending the resolution of the instant case.

Following his arrest, on July 11, 2017, a federal grand jury returned an Indictment charging Defendant with one count of bank robbery in violation of 18 U.S.C. § 2113(a). He had his initial appearance in this charge on July 7, 2017, and the government moved to have him detained pending trial. The Court held a detention hearing on July 14, 2017. At the hearing, the government submitted a series of still images—including three images of the suspect in the TD Bank on July 5, 2017, an image of one of the notes the suspect handed the bank tellers during the robbery, and an image of Defendant outside the residence located at 405 60th Street NE—for the Court's consideration. At the hearing, defense counsel noted that Defendant has a history of drug abuse and requested that the undersigned release Defendant with certain conditions to a halfway house for treatment. An officer with the Pretrial Services Agency for the District of Columbia, however,

5

explained that Defendant does not qualify for placement at a halfway house because he has a pending removal proceeding in this district.

## LEGAL STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e). Thus, even absent a flight risk, danger to the community alone is a sufficient reason to order pretrial detention. *United States v. Salerno*, 489 U.S. 739, 755 (1987); *see also United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986). Where the judicial officer's justification for detention is premised upon the safety of the community, the decision must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f). Where the justification for detention is the judicial officer's finding that no set of conditions will assure the defendant's appearance in court, such a decision must be supported by a preponderance of the evidence. *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

Through the Bail Reform Act, Congress has instructed that a judicial finding of probable cause to believe that a defendant has committed certain types of offenses—including any offense charged under section 18 U.S.C. § 924(c), such as brandishing a firearm during a crime of violence—gives rise to a rebuttable presumption that the defendant constitutes a danger to the community and that no pretrial release condition or combination of conditions may be imposed to reasonably assure the appearance of the person as required or the safety of the community if he were released. *See* 18 U.S.C. § 3142(e)(3)(B); *see also United States v. Mosuro*, 648 F. Supp. 316, 318 (D.D.C. 1986) (holding that a grand jury indictment established probable cause sufficient to

6

create a rebuttable presumption under section 3142(e)).

Once the rebuttable presumption is triggered, it imposes a burden of production on the defendant "to offer some credible evidence contrary to the statutory presumption." *See United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). As this Court recently emphasized, "[w]hile the burden of production may not be heavy, the applicable cases all speak in terms of a defendant's obligation to introduce 'evidence.'" *United States v. Lee*, 195 F. Supp. 3d 120, 125 (D.D.C. 2016) (citations omitted). Thus, some actual evidence and not mere speculation must be offered to rebut the presumption. In the face of the presumption, which "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial," a defendant "should 'present all the special features of his case' that take it outside 'the congressional paradigm[.]'" *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010) (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)); *see also United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (finding that the presumption "represents Congress' general factual view about the special flight risks and the special risks of danger to the community presented by defendants who commit the crimes to which it attaches").

That said, the burden of persuasion on the issue of detention remains, as always, with the government. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). But even where the defendant offers evidence to rebut the presumption, the presumption is not erased. Rather, the "presumption is incorporated into the other factors considered by this Court in determining whether to grant a conditional release and is given substantial weight." *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (recognizing that the section 3142(e) presumption does not disappear when rebutted, but "remains in the case as an evidentiary finding militating against release, to be weighed along with

other evidence relevant to factors listed in § 3142(g)").

## ANALYSIS

The government requests that Defendant be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(A) and (f)(1)(D) because his charge—bank robbery, in violation of 18 U.S.C. § 2113(a)—qualifies as a crime of violence and because of his extensive criminal history, which includes two narcotics-related convictions. The government also maintains that the charged conduct here gives rise to a rebuttable presumption of dangerousness and fugitivity under 18 U.S.C. § 3142(e)(3)(C). With respect to this latter point, the government is mistaken. Defendant's charged conduct does not satisfy any of the criteria listed under 18 U.S.C. § 3142(e)(3) and thus does not give rise to a rebuttable presumption that no conditions of release will assure the safety of the community. Nevertheless, the Court finds that Defendant should be detained pending trial. Indeed, while Defendant attributed his criminal history to a long-standing drug addiction and requests that he be released with conditions to a halfway house that will provide him with treatment for drug dependency, the Court finds, based on the facts before it, that no conditions of release will reasonably assure the safety of any other person and the community. In reaching this conclusion, the Court considers: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). As demonstrated below, a weighing of all of these factors compels the conclusion that Defendant should be detained pending trial.

1.   *Nature and Circumstances of the Charged Offenses*

The first factor, the nature and circumstances of the charged offense, favors detention. As described in detail above, Defendant is charged with a robbing a bank. And while the government's proffer does not establish that Defendant was armed during the alleged offense, one need not be armed with a firearm in order to pose a threat to another person. Indeed, even without using a weapon, Defendant's alleged conduct resulted in the hospitalization of one of the bank tellers during the robbery. *See supra* note 1. Moreover, the still images of the robbery provided by the government establish that the offense occurred during the middle of the day in the clear vicinity of many customers of the bank. Further, by his own admission, Defendant attempted to avoid arrest shortly after the alleged robbery in this case by speeding away from law enforcement in his car on an open street. Accordingly, the Court finds that the facts proffered by the government are sufficiently concerning to warrant pretrial detention.

2.   *The Weight of the Evidence*

The weight of the government's evidence also favors detention. While there are no clear identifications of Defendant based on the video surveillance evidence, a review of the images provided by the government makes clear that a reasonable jury could conclude that Defendant is the suspect in the video. Indeed, the individual is not wearing a mask—though his face is partially obstructed by sunglasses and a distinct hat—and bears a close resemblance to Defendant. Further, the GPS tracker placed in the stolen cash led law enforcement directly to the residence where Defendant was staying. At this house, law enforcement observed Defendant wearing the same shoes and watch as the individual in the video footage of the robbery. Though Defendant evaded arrest that day, a search of the residence also recovered the bag and pants worn by the suspect in

the footage, both of which were located in an area of the home that the owner identified as being occupied by Defendant.

### 3. *The History and Characteristics of the Defendant*

The history and characteristics of Defendant also favor detention. As defense counsel acknowledged at the detention hearing in this matter, Defendant has a long history of criminal conduct that is perhaps reflective of drug abuse or, at a minimum, an impulse to ignore court orders. Neither possibility works in Defendant's favor for purposes of the government's motion to detain him pending trial. Indeed, in 2009, Defendant was convicted for felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), in the District of Maryland. He served a term of 100 months of incarceration for this conviction, which only recently ended, and has already violated the conditions of his supervised release imposed by that court on a number of occasions. On June 9, 2017, for example, he was arrested for disorderly conduct and making a false statement to a peace officer in Maryland. Three days later, he was arrested again in Maryland, this time for stealing a motor vehicle. Beyond these arrests, according to a probation petition prepared in Maryland, Defendant has failed to provide his probation officer with his current home address,[2] failed to notify his probation officer of his arrests, and failed to attend required mental health treatment, all in violation with the conditions of his release.

In addition to these recent arrests, Defendant's criminal history includes: a 2008 conviction for second degree assault; a 2007 conviction for the malicious destruction of property; a 2006 conviction for felon in possession of a firearm; a 2000 conviction for the unlawful taking of a motor vehicle; a 1999 conviction for felon in possession of a firearm; another 1999 conviction for

---

[2] Following his release from incarceration in Maryland, Defendant moved in with his mother, but he has reportedly not lived there for weeks. Defendant's mother is now unwilling to act as a third party custodian for him, according to defense counsel.

felon in possession of a firearm and possession of cocaine and marijuana; a 1995 conviction for possession with intent to distribute a controlled substance; two 1994 convictions for possession of firearms; a separate 1994 conviction for carrying a concealed deadly weapon; a 1990 conviction for possession with intent to distribute cocaine; a 1989 conviction for possession with intent to distribute a controlled substance; a 1989 conviction for carrying a dangerous weapon; and a 1987 conviction for escape. His criminal history report also indicates that a bench warrant was executed against him in 2008. In short, it appears that Defendant has steadily engaged in criminal conduct since the 1980's, with the only breaks coming in the form of periods of incarceration. Defendant's criminal history and, notably, his history of noncompliance with the terms of his past conditions of supervised release, lead the Court to conclude that pretrial detention would be appropriate here.

        4.       *The Danger to the Community*

The fourth factor, the danger to the community, also weighs in favor of detention. Based on the government's proffer, Defendant has engaged in a pattern criminal behavior that demonstrates an alarming lack of concern for the well-being of others. The conduct with which Defendant has been charged most recently resulted in at least one hospitalization, and—luckily—Defendant was not even armed. But a review of Defendant's criminal history reveals that, in the past, that has not always been the case. Equally troubling is Defendant's history of noncompliance with court-ordered conditions of supervised release. In fact, just a few weeks ago, while on supervised release out of Maryland, Defendant continued to engage in criminal conduct. The undersigned is thus reluctant to consider Defendant's request for release to a halfway house—and such a request, at least according to the Pretrial Services Agency, is unfeasible to begin with regardless of the conditions imposed by this Court due to Defendant's charges and history. Accordingly, the Court

finds that there is no condition or combination of conditions that would reasonably assure the safety of the community if Defendant were released.

## CONCLUSION

Based upon consideration of all the evidence and the factors set forth in 18 U.S.C. § 3142(g), of the statutory presumption applicable here, and of all less-restrictive alternatives to pretrial detention, this Court finds by clear and convincing evidence that no condition or combination of conditions exist that would reasonably assure the safety of the community. Therefore, the government's motion for pretrial detention is granted.

Date:  July 18, 2017                                    _____
                                                        G. MICHAEL HARVEY
                                                        UNITED STATES MAGISTRATE JUDGE